```
         IN THE UNITED STATES DISTRICT COURT FOR THE
                   EASTERN DISTRICT OF OKLAHOMA

SAMANTHA K. LYNN,                    )
                                     )
              Plaintiff,             )
                                     )
v.                                   )   Case No. CIV-22-281-JAR
                                     )
COMMISSIONER OF THE SOCIAL           )
SECURITY ADMINISTRATION,             )
                                     )
              Defendant.             )
```

## OPINION AND ORDER

Plaintiff Samantha K. Lynn (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is ordered that the Commissioner's decision be **AFFIRMED**.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was 45 years old at the time of the ALJ's decision. Claimant obtained her GED. Claimant worked in the past as an assembler. Claimant alleges an inability to work beginning July 3, 2019 due to limitations resulting from dizzy spells, shoulder

3

impingement status post-surgery, and hand swelling/numbness.

## Procedural History

On March 24, 2020, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On July 16, 2021, Administrative Law Judge ("ALJ") Jennifer M. Fellabaum conducted an administrative hearing by telephone due to the extraordinary circumstances posed by the COVID-19 pandemic. On October 5, 2021, the ALJ issued an unfavorable decision. On August 4, 2022, the Appeals Council denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made her decision at step five of the sequential evaluation. She determined that, while Claimant suffered from severe impairments, she retained the residual functional capacity ("RFC") to perform work at the light exertional level.

## Error Alleged for Review

Claimant asserts the ALJ erred in (1) the RFC determination; and (2) finding at step five that jobs existed which Claimant could

perform given the error in the RFC.

### RFC Determination

In her decision, the ALJ determined Claimant suffered from the severe impairments of right shoulder impingement syndrome and hypertension. (Tr. 17). The ALJ found none of Claimant's conditions met a listing. (Tr. 18). As a result of the limitations caused by her severe impairments, Claimant was found to retain the residual functional capacity to perform light work. Id. In so doing, the ALJ determined Claimant could occasionally crawl and balance; could never climb ladders, ropes or scaffolds, or be exposed to unprotected heights or hazardous machinery; could not operate a motor vehicle for commercial purposes; could occasionally reach overhead with the right dominant upper extremity; and could frequently reach in other directions with the right dominant upper extremity. (Tr. 18-19).

After consultation with a vocational expert, the ALJ determined that Claimant could perform the representative jobs at a light exertional level of mail clerk, office helper, and cashier. (Tr. 26). Consequently, the ALJ found that Claimant had not been under a disability from July 3, 2019 through the date of the decision. Id.

5

Claimant contends the ALJ failed to consider all of the evidence in arriving at the RFC. "[R]esidual functional capacity consists of those activities that a claimant can still perform on a regular and continuing basis despite his or her physical limitations." White v. Barnhart, 287 F.3d 903, 906 n. 2 (10th Cir. 2001). A residual functional capacity assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." Soc. Sec. R. 96‑8p. The ALJ must also discuss the individual's ability to perform sustained work activities in an ordinary work setting on a "regular and continuing basis" and describe the maximum amount of work related activity the individual can perform based on evidence contained in the case record. Id. The ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." Id. However, there is "no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." Chapo v. Astrue, 682 F.3d 1285, 1288 (10th Cir. 2012).

The first deficiency alleged by Claimant truly implicates an

error at step two. Claimant contends the ALJ erred in failing to find her dizzy spells as a severe impairment. Where an ALJ finds at least one "severe" impairment, a failure to designate another impairment as "severe" at step two does not constitute reversible error because, under the regulations, the agency at later steps considers the combined effect of all of the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. Brescia v. Astrue, 287 F. App'x 626, 628–629 (10th Cir. 2008). The failure to find that additional impairments are also severe is not cause for reversal so long as the ALJ, in determining Claimant's RFC, considers the effects "of all of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'" Id. quoting Hill v. Astrue, 289 F. App'x. 289, 291–292, (10th Cir. 2008).

Moreover, the burden of showing a severe impairment is "de minimis," yet "the mere presence of a condition is not sufficient to make a step-two [severity] showing." Flaherty v. Astrue, 515 F.3d 1067, 1070-71 (10th Cir. 2007) quoting Williamson v. Barnhart, 350 F.3d 1097, 1100 (10th Cir. 2003); Soc. Sec. R. 85-28. At step two, Claimant bears the burden of showing the

existence of an impairment or combination of impairments which "significantly limits [his] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). An impairment which warrants disability benefits is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(1)(D). The severity determination for an alleged impairment is based on medical evidence alone and "does not include consideration of such factors as age, education, and work experience." Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988).

Because the ALJ identified other impairments at step two, as long as she considered the effects of Claimant's dizziness in her decision, there is no error. The ALJ identified the medical records which clearly demonstrated Claimant's complaints regarding dizziness, noting Claimant was treated with medications for dizziness and for blood pressure. (Tr. 17). The ALJ continued to address her consideration of the dizziness in finding

> The claimant's reports of dizziness as a symptom have been fully considered in connection with hypertension and this symptom is accounted for by the environmental limitations in the residual functional

8

capacity.

Id.

The ALJ, therefore, considered the severe and non-severe impairments throughout the sequential evaluation process. 20 C.F.R. § 404.1545(a)(2). No error is found in the manner in which the ALJ considered Claimant's dizziness.

Claimant next asserts that the ALJ failed to adequately consider the restrictions imposed by her right arm and hand. Claimant began experiencing pain in her right upper extremity in 2019 that affected her hand and fingers. (Tr. 519). Claimant's physician, Dr. Jeffrey K. Evans, restricted her to no lifting/pushing/pulling in December of 2019. (Tr. 562). Thereafter, Dr. Evans observed Claimant was not in apparent distress and muscle strength testing revealed 5/5 muscle strength throughout bilateral upper and lower extremities. He noted normal inspection bilateral, full range of motion bilateral, stability exam normal. However, he noted a positive impingement on the right. (Tr. 311). To address this condition, Dr. Evans recommended right shoulder arthroscopic extensive debridement and subacromial decompression. Id.

Post-surgery, Claimant resumed therapy and improved. (Tr. 317). Claimant then fell on her right outstretched hand and

9

experienced muscle spasms. (Tr. 332). However, at that appointment on February 6, 2020, it was noted in the treatment notes that Claimant was in no apparent distress with normal muscle strength throughout her extremities, normal motor coordination, sensation, and cardiovascular exams in bilateral upper and lower extremities. Specifically with regard to Claimant's shoulders, the treatment notes indicate "[n]ormal inspection bilateral, full range of motion bilateral, stability exam normal bilateral." (Tr. 334).

The ALJ found Dr. Evans opinions concerning restrictions on lifting, pushing, and pulling were found to be "not well-supported" because they were provided prior to Claimant's surgery. (Tr. 24). Under the new regulations governing the consideration of expert opinions, the most important factors are supportability and consistency, and the ALJ must explain how both factors were considered. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). In this case, the ALJ provided a rational well-supported explanation for discounting Dr. Evans' statements – they were stale and based upon the medical treatment record, they were not consistent with the medical evidence. The ALJ's consideration of Dr. Evans' opinions and Claimant's shoulder condition were supported by substantial evidence.

Claimant also challenges the ALJ's consideration of her subjective statements of limitations posed by her arm. Effective March 26, 2016, the Social Security Administration issued a new policy interpretation ruling governing the evaluation of symptoms in disability claims. Soc. Sec. R. 16-3p, *Titles II & XVI: Evaluation of Symptoms in Disability Claims*, 2016 WL 1119029 (Mar. 16, 2016) (superseding Soc. Sec. R. 96-7p, *Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements*, 1996 WL 374186 (July 2, 1996)). The purpose of the new policy, which applies to the case at bar, is to "eliminat[e] the use of the term 'credibility' from [the] sub-regulatory policy" and "clarify that subjective symptom evaluation is not an examination of an individual's character." Soc. Sec. R. 16-3p at *1; *see also* Sonnenfeld v. Comm'r, Soc. Sec. Admin., 2018 WL 1556262, at *5 (D. Colo. Mar. 30, 2018) (explaining that "SSR 16-3p is a policy interpretation ruling issued by the Social Security Administration that generally eliminates 'credibility' assessments from the social security disability analysis"). In place of "credibility," the Social Security Administration now utilizes the term "consistency." Specifically, the policy provides that "if an individual's statements about the intensity, persistence, and

11

limiting effects of symptoms are consistent with the objective medical evidence and other evidence of record, we will determine that the individual's symptoms are more likely to reduce his or her capacities to perform work-related activities." Soc. Sec. R. 16-3p at *7. Conversely, if the individual's "statements about his symptoms are inconsistent with the objective medical evidence and other evidence, we will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities." Id.; *see also* Sonnenfeld, 2018 WL 1556262, at *5 (explaining that Soc. Sec. R. 16-3p replaces a credibility assessment with an "assessment of the *consistency* of a claimant's statement with the record in its entirety").

Under the new policy, the Social Security Administration continues to evaluate a disability claimant's symptoms using a two-step process:

First, we must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain. Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms is established, we evaluate the intensity and persistence of those symptoms to determine the extent to which

the symptoms limit an individual's ability to perform work-related activities for an adult . . . .

Soc. Sec. R. 16-3p at *2.

With respect to the first inquiry, "[a]n individual's symptoms, . . . will not be found to affect the ability to perform work-related activities for an adult . . . unless medical signs or laboratory findings show a medically determinable impairment is present." Id. at *3.  In conducting the second inquiry, the ALJ should examine "the entire case record, including the objective medical evidence; an individual's statements about the . . . symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." Id. at *4.

In accordance with the general standards explained above, the Tenth Circuit has previously stated that an ALJ conducting a "credibility" analysis must consider and determine:

> (1) whether the claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether the impairment is reasonably expected to produce some pain of the sort alleged (what we term a "loose nexus"); and (3) if so, whether, considering all the evidence, both objective and subjective, the claimant's pain was in fact disabling.

Keyes-Zachary v. Astrue, 695 F.3d 1156, 1166-67 (10th Cir.

13

2012) (citing Luna v. Bowen, 834 F.2d 161 (10th Cir. 1987)). Factors the ALJ should consider in determining whether a claimant's pain is in fact disabling include the claimant's attempts to find relief; a claimant's willingness to try any treatment prescribed; a claimant's regular contact with a doctor; the possibility that psychological disorders combine with physical problems; the claimant's daily activities; and the dosage, effectiveness, and side effects of medication taken by the claimant. Keyes-Zachary, 695 F.3d at 1166-67; *see also* Soc. Sec. R. 16-3p at *7 (listing similar factors); 20 C.F.R. §§ 404.1529(c)(3); 416.929(c)(3).

Credibility/consistency findings are "peculiarly the province of the finder of fact," and courts should "not upset such determinations when supported by substantial evidence." Cowan v. Astrue, 552 F.3d 1182, 1190 (10th Cir. 2008) (quoting Kepler, 68 F.3d at 391). However, the ALJ's consistency findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Id. (quoting Kepler, 68 F.3d at 391). This pronouncement by the Tenth Circuit echoes the Social Security Administration's policy interpretation regarding what an ALJ must include in his written decision. *See* Soc. Sec. R. 16-3p at *9 ("The [ALJ's] determination or decision must contain specific reasons for the weight given to the

individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms."). So long as the ALJ sets forth the specific evidence he relies on in evaluating the consistency of the claimant's subjective complaints with other evidence, the ALJ "need not make a formalistic factor-by-factor recitation of the evidence." Keyes-Zachary, 695 F.3d at 1167. "[C]ommon sense, not technical perfection, is [the reviewing court's] guide." Id.

Claimant's statements concerning the limitations caused by her shoulder are not consistent with the objective medical record. Claimant cannot rely upon Dr. Evans' statements to bolster her claims since those statements are attributable to a time pre-surgery. The medical record post-surgery largely shows improvement. The ALJ's consideration of Claimant's subjective statements with skepticism given the medical record is supported and this Court finds no error in her conclusions.

### Step Five Evaluation

Claimant asserts that since the RFC was not well-supported, the hypothetical questioning of the vocational expert derived from that RFC creates error at step five. This Court finds no error in the RFC and, therefore, the ALJ's reliance upon the vocational

15

expert's testimony to arrive at representative jobs was not erroneous.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, this Court finds, in accordance with the fourth sentence of 42 U.S.C. § 405(g), the ruling of the Commissioner of Social Security Administration should be and is **AFFIRMED.**

IT IS SO ORDERED this 30th day of March, 2024.

_____
JASON A. ROBERTSON
UNITED STATES MAGISTRATE JUDGE

16